ALEXANDER BONNELL AND OTHERS *vs.* WILLIAM A. CHAMBERLIN AND OTHERS.

Goods were sold to A, in the belief that B was a partner with him. In a suit afterwards brought by the vendor against A and B as partners for the price of the goods, it was held that evidence of an enquiry made by the vendor, at the time of the sale, at a mercantile agency, as to the credit of B, but without B's knowledge, was not admissible.

The taking of the note of an individual partner for a partnership debt, where agreed to be taken as payment, extinguishes the partnership debt.

And the question whether the note is taken in payment of the debt, or as collateral security only, is one of fact for the jury.

A receipt in full, unless given under circumstances of mistake, surprise or fraud, is a discharge of all indebtedness.

*It seems* that where a party has entered into a fraudulent arrangement with another, by which the latter is to purchase goods on credit and turn them or their proceeds over to him in payment of an indebtedness created for the purpose and in great part fictitious, and thus to defraud the parties of whom the goods should be purchased, such party, however liable for the fraud, would not be liable in assumpsit as a purchaser of the goods.

Assumpsit for goods sold to William A. Chamberlin, C. C. Chamberlin and J. L. Root as partners. ;

On the trial of the case to the jury, the defendants, C. C. Chamberlin and Root, admitted their liability for the goods. The defendant William A. denied his liability and claimed and offered evidence to prove that at the time of the purchase of the goods he was not associated with the other defendants in business; that he had no part in purchasing them; that he had sold out his store and all interest in the business to the other defendants, who had formed a new copartnership before such purchase; that the plaintiffs were informed of these facts and sold the goods to C. C. Chamberlin and Root, with full knowledge that they alone constituted the firm and were liable therefor.

The plaintiffs denied all knowledge of such sale, and claimed that it was fraudulent and void; that William A., previous thereto, entered into a corrupt agreement with the other defendants to sell out to them, and create a large fictitious indebtedness to him, and that they should purchase goods on credit and deliver them to him, William A., under the pretense of paying such fictitious indebtedness; and that in pursuance of this fraudulent agreement, C. C. Chamberlin and Root purchased these goods and delivered them or their proceeds to William A. To show that they gave credit to William A. in the sale of the goods, the plaintiffs offered evidence that they, without the knowledge of William A., sent a messenger to a mercantile agency in the city of New York to ascertain his credit and standing in business. To this evidence the defendants objected, but it was admitted.

The defendants claimed that after the sale of the goods and the expiration of the credit therefor, the plaintiffs agreed

with C. C. Chamberlin and Root to settle the account and to take their note for its full amount and interest in full payment thereof; and that the plaintiffs did so take the note of C. C. Chamberlin and Root in full payment of their account, and gave them a receipt in full therefor. The defendants denied this claim and insisted that the notes were taken as collateral security only. Upon these facts the defendant, William A., requested the court to charge the jury that the fraud, if any, in the sale by him to the other defendants, could be taken advantage of by those only who were injured or deceived by it; and that the plaintiffs, as they sold the goods to C. C. Chamberlin and Root and gave them credit only, knowing of the sale by William A. to them, could not avail themselves of the fraud to charge him. But the court charged the jury that if the agreement before stated had been made by William A. and the other defendants, and the other defendants in pursuance thereof purchased the goods of the plaintiffs and delivered them to William A., then William A. was equally liable with the other defendants for the price of the goods. The defendant, William A., further requested the court to instruct the jury that if they found that after the sale of the goods and after the expiration of the credit given, the parties agreed to substitute a note for the account, and that such note was to be given and received in full payment thereof, and such note was so given and received, the plaintiffs could not recover in this action but must resort to the notes. The court instructed them that if the goods were sold to all the defendants, an agreement to take, and the taking of the note of two of the defendants in payment of the account, would not discharge the other defendant, unless there was some new consideration; that a receipt in full imports no consideration, and, there being no other proof of consideration, the transaction in this case was void. The jury returned a verdict against all three defendants, and the defendant William A. filed a motion for a new trial for error in the charge to the jury, and in the admission of evidence.

*Foster* and *Graves*, in support of the motion.

1. The fact of the plaintiffs' sending a messenger to inquire as to the credit of the defendant William A., without his knowledge, was inadmissible. It was *res inter alios acta.* 1 Stark. Ev., 40. *Beach* v. *Catlin,* 4 Day, 293. *Jacobs* v. *Putnam,* 4 Pick., 108. Even if pertinent to the inquiry as to the party to whom credit was given, yet that inquiry had no pertinence to the question whether William A. was in fact a partner and a joint purchaser of the goods.

2. The court erred in omitting to instruct the jury that any fraud in the sale of William A. to the other defendants could be taken advantage of only by persons who were deceived by such fraud, and not by the plaintiffs who had knowledge of the sale and gave credit independently thereof.

3. The court should have charged the jury that the giving and receiving of the note in payment of the account, if done in good faith, and the account receipted and given up, is in law payment of the account. Story on Prom. Notes, §§ 104, 407, 438. Byles on Bills, 286. *Sheehy* v. *Mandeville,* 6 Cranch, 264. *Arnold* v. *Camp,* 12 Johns., 409. *Higgins* v. *Packard,* 2 Hall, 547. *Livingston* v. *Radcliff,* 6 Barb., 201. *Van Eps* v. *Dillaye,* id., 244. *Thompson* v. *Percival,* 5 B. & Ad., 925. *Hart* v. *Alexander,* 2 M. & W., 483. *Goodrich* v. *Stanley,* 24 Conn., 621.

4. The agreement for payment required no consideration, and if it did there was sufficient consideration in this case.

*Welch* and *Carpenter*, against the motion.

1. The evidence as to sending a messenger to ascertain the credit of William A., at the time of the sale was admissible. 1st. It was a part of the *res gestae.* 2nd. It was a circumstance in the case showing the probability of the plaintiffs' testimony. Swift's Ev., 153. 3d. It tended directly to contradict the claim that the goods were sold to the other defendants alone.

2. The refusal of the court to charge the jury on the subject of fraud, as requested by the defendants, furnishes no ground for a new trial. The court complied with a portion

of the defendants' claim, and a further compliance would have been erroneous.

3. The giving and receiving of the note of C. C. Chamberlin and Root in payment, did not discharge William A. Chamberlin. He was a stranger to the contract, and the contract was without any consideration. Besides, the evidence does not show that there was any such contract between the parties.

4. If the court can see that substantial justice has been done, a new trial will not be granted. *Kelsey* v. *Hanmer*, 18 Conn., 320. *Brown* v. *Keach*, 24 id., 73.

ELLSWORTH, J. One of the important questions made on this trial is, whether William A. Chamberlin was in partnership with C. C. Chamberlin and J. L. Root, at the time of the sale of the goods in question by the plaintiffs. To establish the affirmative, and that credit was given to him as a partner, the plaintiffs offered to prove that at the time of the sale they sent a messenger to a certain mercantile agency in the city of New York to learn what was the credit of the said William, which fact was unknown to him. This evidence was objected to, but was received. We think it was improperly received. The fact was *res inter alios acta.* It tended to prove that the plaintiffs supposed they were selling and giving credit to the said William as one of the purchasers, but it had no proper tendency to prove that the sale was in fact made to him as one of the purchasers. It was not sufficiently certain and direct to lay the foundation of any presumption against a stranger. 1 Stark. Ev., § 23, p. 40, contains the true rule. The same principle was laid down in *Beach* v. *Catlin*, 4 Day, 293, and in *Jacobs* v. *Putnam*, 4 Pick., 108.

Another claim made is, that the court erred in charging the jury, that if in fact the goods were sold to the three defendants as partners, an agreement with the plaintiffs to take the note of two of the defendants in payment, at a time subsequent, and actually so taking it, would not discharge the other defendant, unless there was some further consider-

ation for the agreement. We think the court erred in giving this instruction to the jury. An agreement with two of three partners, to take the note of the two *in payment,* and so taking it, as is here found, rests on a sufficient consideration, and is in law a good and sufficient payment. The more usual question in this class of cases is one of fact for the jury, whether the new note is agreed to be received in payment, or is merely new security or security in a new form, in which case, if this was all, it would not be payment; but the contrary is agreed to be the fact here, and consequently no such question can arise. As to consideration, there is enough growing out of the transaction itself. The creditor receives the new note *in payment;* his account is closed, and the satisfaction is as complete and perfect as if the note had been one of a third person. The creditor gets something of value in a clear and absolute note, and something he can make use of; the debtor often gains time, and always a settlement and an extinguishment of the account.

As evidence of an agreement that the new note is received in payment of the account, our courts have attached peculiar importance to a receipt which expresses that the *note is given in full payment.* Herein we have gone beyond the courts in some of the other states; but we have so held repeatedly, and no one doubts but that, according to our decisions, a *receipt in full* is a discharge, unless it is executed under circumstances of mistake, accident, or surprise, or is founded in fraud. *Fuller* v. *Crittenden,* 9 Conn., 401. *Tucker* v. *Baldwin,* 13 id., 136. *Hurd* v. *Blackman,* 19 id., 177.

Another question has been discussed at the bar, viz.: whether if William A. Chamberlin sold out his stock of goods to C. C. Chamberlin and J. L. Root, before the purchase of the goods in question, with a fraudulent intent to avail himself of future purchases made by the new firm in New York, he would not still be liable. This question we have not had occasion very fully to examine, as we decide to grant a new trial on other grounds, but it is not very easy to see, if it be true that C. C. Chamberlin and J. L. Root were the real and true purchasers of the goods from

the plaintiffs, how the fraud spoken of would make William A. Chamberlin liable in this form of action, any more than if he had given to his debtors a fraudulent recommendation, that they might go and buy goods and turn them out to him so that he might get his debt paid. We advise a new trial.

In this opinion the other judges concurred.

New trial advised.

---

# SUPREME COURT OF ERRORS.

## MIDDLESEX COUNTY, NOVEMBER TERM, 1857.

Present,

STORRS, C. J., HINMAN AND ELLSWORTH, JS.